PILCHER V. SIOUX CITY SAFE DEPOSIT & TRUST COMPANY.

1. A corporation, trustee in a mortgage, with power on default to take possession of the mortgaged property, and also to foreclose the mortgage on default being made appointed an attorney as its agent, with authority to foreclose the mortgage, and to take whatever action was necessary to protect the interests of the trustee. The attorney sued to foreclose in a federal court, but without asking for a receiver, took possession of the property under the power contained in the mortgage, which he held until ousted by a receiver appointed for the mortgagor by a state court. *Held*, that his authority was broad enough to enable him to bind the trustee for the expenses incurred in taking an appeal in its behalf from the order of the state court appointing the receiver, and which resulted in his regaining possession of the property; such action being necessary or proper for effecting the purpose of his agency, within Comp. Laws, § 3981.

2. It is not reversible error for a court to refuse to strike out testimony of statements of a purported agent as to his agency, admitted without ob-

jection, although no independent proof of the agency had previously been made, where such proof was afterwards supplied.

(Opinion filed September 2, 1899.)

Appeal from circuit court. Custer county.   Hon. LEVI MC-GEE, Judge.

Action by Joseph E. Pilcher against the Sioux City Safe Deposit & Trust Company.  Judgment for plaintiff, and defendant appeals.  Affirmed.

*Charles W. Brown,* for appellant.

*Wood & Porter,* for respondent.

FULLER, J.   This is an appeal from a $1,500 judgment resulting from the trial of an action to recover for certain stenographic work performed by Ed. Granthum, respondent's assignor, in the preparation of an appeal to this court; and the liability of appellant in the premises is the principal question presented.   It is undisputed that the services were performed, and of the value claimed, no part which has been paid by appellant.   It appears that in 1892, through the agency of J. H. Swan, the senior member of an Iowa law firm, a $60,000 loan was negotiated by the Dakota Hot Springs Company, a corporation; and as a part of the transaction a trust deed covering the Evans Hotel, and other valuable property used in connection therewith, was then executed to appellant, as trustee, to secure 100 first mortgage, gold-bearing bonds, each of the denomination of $1,000.   This trust deed contains the usual recitals, and provides, in case of default, that "at the request of the holders of a majority of said bonds the said trustee may enter into and take possession of, all and singular, the aforesaid premises and property hereby conveyed or hereafter con-

veyed, and, as the attorney in fact or agent of said company, the trustees may, by themselves or their agents duly constituted, have, use, and employ the same, making from time to time all needful repairs, alterations and additions thereto, which in no case shall exceed the net income therefrom; or the said trustees may lease or let the said premises, property, or any part thereof, upon such rents or proportion of income as they may deem advisable, and after deducting the expenses of repairs, alterations, and additions, and other expenses in the management of the trust, apply the proceeds, rents, issues, and profits of said premises to the payment of the principal and interest of all such bonds due and remaining unpaid; or the trustee may, in its discretion, and on the written request of the holders of a majority of the said bonds then unpaid, apply to the circuit court of the United States, of the district of South Dakota, or any other court having jurisdiction thereof, by a bill in chancery, for the appointment of a receiver, and fore closure of this deed of trust and sale of said premises, and such other and further relief as the court of chancery may, in its discretion, grant; or the said trustee may foreclose this deed of trust without first taking possession of said property. And the trustee shall, after deducting the expenses of operating said property and managing the trust, and, in case of sale, the expenses and costs attending the sale, apply the balance or residue arising from said property or sale to the payment of all bonds due and unpaid, and the remainder of the funds in their hands, if any, shall be paid over to the Dakota Hot Springs Company." Subsequent to the execution of the foregoing instrument Mr. Swan, on appellant's behalf, had occasion to frequently check up the books of the mortgagor, to ascertain the

actual earnings of the property, and the character of its management; and during the early part of the year 1896 he was furnished with a daily statement of receipts and disbursements, under an agreement that appellant should receive all profits arising from the business. This arrangement continued until November of that year, when he entered into actual possession and control for appellant under the terms of its trust deed, and continued to carry on the business and account to appellant until ousted by a receiver appointed by the circuit court in the case of Dudley *et al.* against the Dakota Hot Springs Company; being the case in which the stenographer's work made the basis of this suit was thereafter performed, in preparing an appeal to this court. At this time Mr. Swan was prosecuting in the circuit court of the United States at Deadwood, S. D., an action to foreclose the trust deed above mentioned, but, relying upon his right to possession under the trust deed, had neglected to make application for the appointment of a receiver. As the agent and attorney of appellant, Mr. Swan had all the authority that his principal possessed by reason of the provisions contained in the trust deed; and, from competent testimony introduced at the trial of this action, the jury was fully justified in finding, under proper instructions of the court, that the Dudley case was appealed to this court at his instance, and for the sole purpose of ousting the receiver of the state court and regaining possession for appellant, which was thereby accomplished. Although Mr. Swan was never retained as an attorney in the Dudley case, there was evidence to the effect that he consulted and employed counsel to take the appeal, and assisted in procuring a supersedeas bond, which was executed by the general manager of appellant, as a member of the local board of the

Fidelity and Deposit Company of Maryland, notwithstanding it was shown by his testimony that he had no knowledge of the fact, and never knew that any such proceedings were pending. The theory of the court below seems to be that, in view of the fact that Mr. Swan was fully authorized to take possession of the property in the first instance in the name of appellant, under the trust deed, he could, when ousted, properly resort to all lawful and reasonable means to regain such possession, in order to secure for appellant the right to "enter into and take possession of, all and singular, the aforesaid premises and property hereby conveyed or hereafter conveyed; and, as the attorney in fact or agent of said company, the trustees may, by themselves or their agents duly constituted, have, use, and employ the same." In fact, Mr. Manley, who was the managing executive officer of appellant, testified that Mr Swan "had authority to take what action was necessary to forclose that mortgage, and to protect the Sioux City Safe-Deposit & Trust Company,—to protect their rights and their interests."

Independently of any further authorization, we are disposed to believe that Mr. Swan was invested with all the powers possessed by the trustee, and, in the protection of its "rights and interests," had authority to authorize the employment of a stenographer, whose services were absolutely indispensable to an appeal taken at his instance and request for the sole benefit of appellant. The settled rule is that a corporation may, by parol or implication, unless restricted by statute, authorize an agent to perform any act within the scope of its corporate powers; and, though controverted, there appear to be, in addition to the recitals of the trust deed, facts and circumstances tending to prove an agency broad enough to cover this

case. In any event, the jury, acting within its province, has, after due deliberation, so found. Before the trust deed or other proof of the agency of Mr. Swan had been offered, Mr. Fowler, one of the attorneys who appealed the Dudley case, in which respondent's assignor performed the services of stenographer, was interrogated by Mr. Brown, and testified without objection, as follows: "Q. How do you know that these proceedings were in the interests of the Sioux City Safe-Deposit & Trust Company? A. Because it was to put that company back into possession and oust the receiver. Q. Do you know, except what Col. Swan told you? A. Yes; he had charge of the property. Q. Is that the extent of your knowledge? A. not exactly. Q. Do you know of your own knowledge what Col. Swan was employed to do? A. He was employed to foreclose a mortgage on the property of the Dakota Hot Springs Company, and oust the receiver and get possession of the property. By Mr. Wood: Have you seen Manley's deposition in this case? A. Yes, sir. By Mr. Brown: Now, aside from that, you do not know what was the extent of the retainer or the employment of Col. Swan, do you, except what he told you? A. No, sir; except by his statement and Manley's deposition. Q. I am referring to your personal knowledge A. Except what Col. Swan told me, and as I got it from Manley's deposition. (Counsel for defendant now moves to strike out what the witness says, to the effect that he was employed by the defendant company in this case to render legal services for it, because it appears from the testimony of the witness that he never was employed by the defendant company, and whatever authority he had he got from Col. Swan, and that he does not know what was the extent or scope of the employment of Col. Swan, ex-

cept what Col. Swan told him, and except some information from Mr. Manley's deposition, and, further, because it is provided by Subdivision 2 of Section 467 of the Compiled Laws that an attorney and counselor has power to bind his clients to any agreement in respect to any proceedings within the scope of his proper duties and powers, but that no evidence of any such agreement is receivable, except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court. The motion is overruled by the court, to which ruling defendant duly excepted.)" While agency cannot be established by the declarations of a purported agent, nor by his acts done without the knowledge of the person sought to be charged as principal, the matter of the introduction of such testimony is usually within the discretion of the court, with reference to the order of proof; and when admitted without objection, and the authority of the agent can be reasonably inferred from competent testimony introduced later on, it is not reversibly erroneous to deny a motion to eliminate the evidence of such acts or declarations, and let the jury pass upon the whole case. Supply Co. v. Thompson, 112 Pa. St. 118, 3 Atl. 439; Mechem, Ag. 106; Rice, Ev. 517; Hayne, New Trial & App, 103. As the agent of appellant, Mr. Swan had express authority to protect its rights and interests, to take and maintain possession of the property, and, in the language of the statute, "to do everything necessary, or proper and usual in the ordinary course of business, for effecting the purpose of his agency." Comp. Laws, § 3981; Davis v. Mathews, 8 S. D. 300, 66 N. W. 456.

The numerous assignments of error relating to the court's charge and its rulings on the questions of evidence have been

carefully considered, and we find nothing for which the case should be reversed. The trial court properly applied the law to facts rightfully before it, the jury fixed the amount of appellant's liability, and the judgment appealed from to this court is affirmed.